## Helen P. Young, Appellee, v. Union Life Insurance Company, Appellant.

### Gen. No. 21,399.

1.  INSURANCE, § 347*—*when policy containing incontestable clause becomes incontestable.* Where a life insurance policy provided that it would remain in force for one month after the expiration of one year from its date although the second year's premium should not be paid, and that after one year from date it would be incontestable except for nonpayment of premiums, *held* that at the death of the insured, which occurred in the thirteenth month after the date of the policy, it had become incontestable on the ground of fraudulent statements in the application.

2.  INSURANCE, § 641*—*when notice of cancellation inadmissible.* In an action on a life insurance policy, incontestable after one year from the date thereof, except for nonpayment of premiums, *held* that a written notice given to the insured by the insurer within one year of the date of the policy, that it would not be carried after the expiration of the year was inadmissible to prove cancellation of the policy, since it was a notice to terminate it at a future time when it was incapable of termination by the insurer.

3.  INSURANCE, § 359*—*what is effect of attempted cancellation.* An ineffectual notice of cancellation of a policy is a recognition of its validity.

4.  INSURANCE, § 187*—*what essential to cancellation of policy.* Where the insurer under a life insurance policy, incontestable after one year from date, gave notice to the insured during the first year that it would not carry the policy after the termination of the first year, *held* that, as the policy was a voidable contract and as the attempted cancellation was in the nature of a rescission, both apt

notice of an election to terminate *in præsenti* and a tender back of the premium were essential to terminate the policy.

5. INSURANCE, § 641*—*when evidence of cancellation of policy inadmissible.* Evidence of notice to the insured, under a life insurance policy, by the insurer that it had elected to terminate the policy, *held* properly excluded where the insurer's counsel admitted that they did not intend to prove a tender back of the premium.

6. INSURANCE, § 702*—*what recoverable in action on life insurance policy.* Interest on the amount of a policy of life insurance is recoverable in an action thereon.

Appeal from the Superior Court of Cook county; the Hon. H. STERLING POMEROY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1915. Affirmed. Opinion filed December 27, 1916.

EASTMAN & WHITE, for appellant; RALPH R. HAWX-HURST, of counsel.

KING, BROWER & HURLBUT, for appellee; SAMUEL B. KING, of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

This is an appeal from a judgment of the Superior Court of Cook county rendered in favor of Helen P. Young, plaintiff below and appellee herein, against the Union Life Insurance Company, a corporation, defendant below and appellant herein, upon an insurance policy issued February 16, 1911, in favor of one Edward B. Fairfield, to whom we shall hereinafter refer as the insured.

The declaration consisted of two counts: The first count declared upon the policy in general, and the second count set forth the policy *verbatim*. On June 7, 1912, the defendant filed a general and a special demurrer, the latter alleging that the plaintiff is not the proper party under the contract; that the declaration does not allege that she had an insurable interest; and

that there is not a proper allegation of the assignment of the policy. The demurrers were overruled and a plea of general issue was filed, with notice of special defenses.

The special matters of defense were substantially as follows:

"That the contract declared upon and the assignment thereof never came into existence by reason of the fact that certain conditions precedent were not complied with by said plaintiff and by Edward B. Fairfield, deceased; that the said policy was not accepted nor was the first premium paid while the insured was in good health; that the insured represented in the application that he had never been refused insurance by any other company prior to applying to the Union Life Insurance Company for insurance, whereas he had been refused insurance by a number of companies, and that he knew that he had been refused insurance and had been so informed and wilfully and fraudulently denied the fact in his application; that he committed the grossest fraud in misrepresenting the state of his health, especially in relation to his habits in regard to alcoholic drinks, etc.; that the policy sued upon was canceled by the defendant company within one year from the date thereof, before the payment of the second premium was tendered or received; that said cancellation was made by notice in writing to said Edward B. Fairfield and to Helen P. Young, assignee of the policy, and also orally by demand for the return of said policy; that notice of said cancellation was given to the insured and to the plaintiff within the year of the date of the issuance of the policy."

Upon the hearing of the case below, the plaintiff introduced the following evidence: The first and second pages of the insurance policy, numbered 3521, of the Union Life Insurance Company (defendant); the proof of the death of Edward B. Fairfield (deceased); the assignment of the policy to plaintiff; the acknowledgment by the defendant of receipt of assignment and the written statement by defendant that it would make the

necessary changes on its books; a promissory note for $8,000 made by Fairfield (deceased) and in possession of plaintiff which was given as security; a counter-signed receipt of the defendant for a premium on policy No. 3521 for $190.85; the testimony of the secretary of the defendant that there was on January 9, 1912, a policy No. 3521, issued by the defendant, outstanding on the life of Fairfield. The defendant introduced in evidence that part of the policy which the plaintiff had not offered and the application of Fairfield for insurance. The following three documents were offered, the first being rejected, and the other two received:

"January 9th, 1912.

"Mr. Edward B. Fairfield,
        4637 Magnolia Ave.,
                City.

"Dear Sir:—

"Acting under our rights on policy #3521 on your life, we desire to notify you that the policy will not be carried beyond the first year.

"We take the opportunity of notifying you in due time, so that you may not be put to the expense or trouble of arranging for second year premium, which we will not accept, as the risk will not be carried.
                Very cordially yours,
                        Union Life Insurance Co.
                                Secretary."

"January 9th, 1912.

"Mrs. Helen P. Young,
        Chicago, Illinois.

"Dear Madam:—

"Acting under our rights on policy #3521 on the life of Edward B. Fairfield, we desire to notify you that the policy will not be carried beyond the first year.

"We take the opportunity of notifying you in due

time, as our records show that you are the beneficiary in the above policy.

Very cordially yours,

UNION LIFE INSURANCE Co.

*Secretary.*"

"Chicago, January 9th, 1912.

"To Whom It May Concern:

"I hereby certify that I have caused to be this day and date delivered to the United States Mail Box in the Stock Exchange Bldg., Chicago, letter to Edward B. Fairfield, insured, on policy #3521.—that the Union Life Insurance Company will not carry the policy beyond its first policy year, and that I have done so acting under our rights in the aforesaid policy.

L. S. HALL,

*Secretary.*"

The defendant offered to prove by the testimony of a witness who was connected with the defendant that on December 26 or 29, 1911, he made a demand on the insured for the return of the policy and that it was refused. On the ground that counsel for defendant having stated that it did not intend to prove that the premium was tendered back, the evidence was rejected. The defendant offered to prove that the insured shortly prior to February 16, 1911, had been rejected by a number of insurance companies on account of ill health and had fraudulently deceived the defendant in obtaining the policy here sued on.

The trial judge rejected the evidence on the ground that the premium, admittedly, had not been tendered back, and more than a year having elapsed between the date of the policy and the death of the insured, the policy was then incontestable.

At the close of all the evidence a motion, requesting the court to instruct the jury to find a verdict against the plaintiff, was made and was denied. Plaintiff then moved that the jury be instructed to return a verdict for the plaintiff and to assess her damages in the sum of $5,453.57. That instruction was then given by the

court and objected to by the defendant. A verdict was returned and judgment entered thereon, to reverse which the defendant prosecuted this appeal.

The determination of this case depends upon the answer to two questions:

First. Was a tender of the premium necessary to cancellation?

Second. Did the policy before the death of the insured become incontestable?

We will consider the latter question first.

The insurance policy which was issued by the defendant to Fairfield, now deceased, was dated February 16, 1911, and was a term policy. It was paid up until December 16, 1912; that is for a year and ten months from the time it was issued. On August 19, 1911, it was assigned to the plaintiff by the insured. That portion of the policy which is of chief importance on the subject of incontestability is as follows:

"This Insurance is Granted in consideration of the application for this policy, a copy of which is attached hereto and made a part hereof, and of the payment in advance of One Hundred Ninety and 85/100 Dollars, being the first annual premium for term insurance, from December 16th, 1911, to December 16th, 1912, which is the first policy year. This insurance will be continued after the first year as a non-participating

ORDINARY LIFE POLICY

for the same amount by the payment of One Hundred Ninety and 85/100 Dollars, on or before the 16th day of February, 1912, and annually thereafter on the same day in each year during the continuance of this Policy.

"This Policy is Incontestable after one year, except for the non-payment of premiums."

It would seem upon an examination of the above phraseology that it was optional with the insured to keep it as term insurance or take the "ordinary life policy." There is no evidence to show that any change was made from the first intention of the insured to take a term policy.

The receipt given by the defendant for the first premium of $190.85 contains the following language:

"And the said policy is hereby continued in force until the 16th day of February, 1912."

The second premium on the policy was never paid, but the policy provided that if the death of the insured occurred within one month (the so-called period of grace) after the expiration of one year, it would remain in force. It will be seen that the insured died within the period of grace shortly after the end of the first year. There is no doubt, therefore, that the policy took effect on February 16, 1911, and that the language in the policy, "After one year from this date this policy shall be incontestable except for the nonpayment of premiums," means that on February 16, 1912, the period of contestability had expired, and that on February 22, 1912, the date of the death of the insured (and within the month of grace), the policy was incontestable. *The Royal Circle v. Achterrath,* 204 Ill. 549; *Weil v. Federal Life Ins. Co.,* 182 Ill. App. 322.

As to the first question above mentioned, was a tender of the premium necessary to cancellation? It is admitted that the defendant undertook to rescind or cancel the policy and did not tender back the money it had received as premium, which latter was the consideration paid by the insured for the policy.

The defendant offered evidence to prove that the policy had been canceled within the policy year, that is to say, about December 29, 1911, and on or about January 9, 1912; in the first instance a conversation between an officer of the company and the insured and the delivering of a notice of cancellation, and in the second instance, the written notices of cancellation mailed both to the insured and to the assignee (plaintiff). A written notice of cancellation dated January 9, 1912, from the defendant to the insured which was offered by the defendant and excluded by the trial judge, contained the following language:

"Acting under our rights on policy #3521 on your life, we desire to notify you that the policy will not be carried beyond the first year.

"We take the opportunity of notifying you in due time, so that you may not be put to the expense or trouble of arranging for second year premium, which we will not accept, as the risk will not be carried."

We are of the opinion that the trial judge was right in excluding that document from evidence inasmuch as it was a notice to terminate the policy at a future time and at a time when, under the incontestable clause, the policy would be incapable of termination by the defendant.

The written notice dated January 9, 1912, from the defendant to the assignee of the policy (plaintiff) which was admitted in evidence, contains the following:

"Acting under our rights on policy #3521 on the life of Edward B. Fairfield, we desire to notify you that the policy will not be carried beyond the first year."

This was objected to and should have been excluded for substantially the same reasons as those given for the exclusion of the preceding notice to the insured.

The defendant undertook to introduce in evidence the testimony of a witness connected with the Union Life Insurance Company, of a conversation with the insured which took place in St. Luke's Hospital on or about December 26 or 29, 1911, to the effect that the company had elected to void its liability under policy No. 3521 because of fraud in the representations to the company in securing the policy; and that he requested Fairfield to return the policy, which Fairfield refused, and that he thereupon handed to said Fairfield a sealed envelope which contained in substance a notice of cancellation of the policy. Objection to the testimony was made by the plaintiff on the ground that it did not appear that the defendant returned any part of the premium which the company had received. It was ad-

mitted by counsel for the defendant that they did not intend to prove that they tendered back any part of the premium.

The trial court thereupon ruled that the premium should have been tendered back at that time, and that as it was admitted that it was not tendered back at that time, the evidence offered was inadmissible.

Counsel for defendant in their brief used the following language:

"We submit respectfully and earnestly that this ruling was absolutely erroneous, and although supported apparently by some authorities, it is not in accordance with the weight of authority, with the best public policy, nor with the most enlightened view upon the subject of contracts, and especially insurance contracts."

The subject of returning premiums coincident with cancellation has been discussed by many courts, and about it there still remains some confusion and also diversity of opinion. Counsel for the defendant undertake to make a distinction between policies which are voidable and those which are void *ab initio*. We do not perceive that it is of importance in this case. It may be said with reason, however, that every policy of life insurance which contains an incontestable clause is a voidable contract, and is never void *ab initio;* the reason being that if the insurer allows the specified term (a year in this case) to elapse without a contest or cancellation, all the defenses, such as fraud and misrepresentation, become untenable and the contract unassailable.

On the other hand, it may be contended that the only time when the fraud or misrepresentation could void the policy was when the fraud and misrepresentation occurred, and that was at the beginning. In other words, when the company undertakes to elect to terminate the contract, the termination of the contract does not date from the time of election, but at the time

of the breach, which was the time when the fraud or misrepresentation took place.

As a matter of fact, the defendant in this case undertook to prove that the policy was obtained by fraud and, therefore, that it was void *ab initio*. It also did prove, by the letter dated January 9, 1912, that it elected to cancel the policy not *in præsenti,* but at the end of the first year. Necessarily, the two positions are in conflict. The policy cannot at one and the same time be void and voidable. The letter of so-called cancellation recognized and ratified the policy as a good policy for at least one year.

Being of the opinion that the contract in this case was a voidable contract, it follows that a cancellation is in the nature of a rescission, and requires for its consummation both apt notice of an election to terminate *in præsenti* and a relinquishment of the consideration. We cannot consider the defendant as seeking to avoid liability on the policy because of the fraud or misrepresentation of the insured, but only as seeking to rescind, which latter involves both an affirmation of the contract and then a dissolution of it. The defendant had the power to terminate or continue the contract, and it exercised that power as it thought best. No matter what it did in December, 1911, it recognized by its letter of January 9, 1912, the then existence of the policy. It cannot at one and the same time consider the policy alive for the purpose of earning premium, and dead for the purpose of avoiding a loss.

Assuming the truth of the evidence offered, the insured undoubtedly perpetrated a bare-faced fraud, but, in view of the promise by the defendant of incontestability after the lapse of a year, and the failure to perform one of the necessities of cancellation, we are of the opinion that the ruling of the trial judge was in accordance with the law. The cases that are of importance on this subject are the following: *Rigdon v. Walcott,* 141 Ill. 649; *Naugle v. Yerkes,* 187 Ill. 358;

*Dickerson v. Northwestern Mut. Life Ins. Co.,* 200 Ill.
270; *Commercial Life Ins. Co. v. Schroyer,* 176 Ind.
654; *Groffinger v. Metropolitan Life Ins. Co.,* 183 Ill.
App. 618; *Hansell-Elcock Co. v. Frankfort Marine Accident & Plate Glass Ins. Co.,* 177 Ill. App. 500; *Falberg v. Continental Casualty Co.,* 195 Ill. App. 237;
*Seaback v. Metropolitan Life Ins. Co.,* 274 Ill. 516;
*Aetna Life Ins. Co. v. Paul,* 10 Ill. App. 431.

The defendant contends that the plaintiff is not entitled to interest on the amount of the policy. The law,
however, is otherwise.

Some other questions have been raised by counsel
but, in view of the foregoing conclusions, we consider
them as immaterial.

Finding no errors in the record which justify a reversal, the judgment is affirmed.

*Affirmed.*