**UNION INDEMNITY CO. v. DODD et al.**

Circuit Court of Appeals, Fourth Circuit.
September 24, 1927.

No. 2623.

1. **Insurance ☞250(1)—Statute controls as to effect of statements in application.**

State statutes prescribing the effect of statements made in an application for insurance are mandatory, and control the construction of the contract, and cannot be set aside by the company, even with the consent of the assured.

2. **Courts ☞366(1)—Construction of state statute by state courts will be followed by federal courts.**

The construction of a state statute by the courts of the state with respect to its application to insurance contracts will be followed by the federal courts.

3. **Insurance ☞668(6)—Under Virginia law, materiality of representation in application is for court.**

Under the law of Virginia, the materiality of a representation made in an application is a question for the court.

4. **Insurance ☞299—Misstatements in application for accident insurance as to previous indemnities received held material to risk.**

A statement, in an application for a life and accident policy by an agent of the company, that applicant had never received indemnity for accident or sickness, except on one occasion named, whereas he had received indemnity on six other occasions, three of them within 15 months, and the last time more than $200 in amount, *held* a material misrepresentation, which avoided the policy, especially in view of fact that insured was agent of insurer and was guilty of bad faith as such.

5. **Insurance ☞256(2)—Applicant for insurance owes to company same good faith he may demand of it.**

An applicant for insurance owes to the company the same good faith which he may rightly demand of it.

6. **Insurance ☞256(2)—Positive untrue statement in application will be deemed to have been made willfully with intent to deceive.**

A positive statement of fact in an application, falsely made, with respect to a material matter, nothing else appearing, will be deemed to have been made willfully and with intent to deceive.

In Error to the District Court of the United States for the Eastern District of Virginia, at Richmond; D. Lawrence Groner, Judge.

Action at law by Abner Francis Dodd and Mabel K. Dodd against the Union Indemnity Company. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

Frank H. Atwill and Alexander H. Sands, both of Richmond, Va. (Sands, Williams & Lightfoot, of Richmond, Va., on the brief), for plaintiff in error.

Hiram M. Smith, of Richmond, Va. (Pollard & Smith and LeRoy R. Cohen, Jr., all of Richmond, Va., on the brief), for defendants in error.

Before PARKER and NORTHCOTT, Circuit Judges, and ERNEST F. COCHRAN, District Judge.

NORTHCOTT, Circuit Judge. This is a writ of error to a judgment of the District Court of the United States for the Eastern District of Virginia, in a suit at law by Abner Francis Dodd and Mabel K. Dodd, plaintiffs, against the Union Indemnity Company, a

Louisiana corporation, for recovery of indemnity under an accident insurance policy. The plaintiff, Abner Francis Dodd, resided at Emporia, Va., and was in the insurance business, and shortly before the issuance of the accident insurance policy to him he became the agent of the defendant company, and on January 4, 1926, made out an application to the company, for a policy. The policy was at once issued to him and contained the following provision:

"In consideration of the agreements and statements in the application, a copy of which is indorsed hereon and made a part hereof, and of $100 premium, the company insures the plaintiff for the principal sum of $30,000 and a weekly indemnity of $100 for the term of 12 months, against the effects of bodily injuries caused directly, solely and independent of all other causes by accidental means, and which shall result in immediate and continuous disability."

And the signed application contains the following:

"I hereby apply for the policy to be based upon the following representations of facts. I understand and agree that the right to recover under any policy which may be issued upon the basis of this application shall be barred in the event that any one of the following statements material either to the acceptance of the risk or to the hazard assumed by the company is false, or in the event that any one of the following statements is false and made with the intent to deceive."

There were 21 questions answered by Dodd, as applicant for insurance, and among them questions 14 and 15, which questions and answers were as follows:

"14. My average weekly earnings exceed the total single weekly indemnity under all policies which I have or have applied for, except as follows: Ans. No exceptions.

"15. I have never received indemnity for any accident or sickness except as follows: Ans. 1918—Employers' Liab.—Dislocated shoulder—Optional Indem."

On March 9, 1926, Dodd was injured by having a part of his foot shot off; the accident occurring, as claimed by him, while cleaning a shotgun, the gun being accidentally discharged. The defendant company, at the trial, defended on the ground that Dodd had injured himself intentionally, and on the further ground that, in the application, Dodd had made false representations as to material facts, and that therefore the policy was void.

Upon trial, the insurance company moved the court to instruct a verdict for the defendant, which motion was overruled, and the jury found for the plaintiffs. Thereupon,

the defendant below moved the court to set aside the verdict of the jury, which motion the court sustained as to the plaintiff, Mabel K. Dodd, but overruled as to the plaintiff, Abner Francis Dodd, and gave judgment in favor of said Abner Francis Dodd for $15,000, the amount assessed by the jury, from which final judgment of the court the Union Indemnity Company sued out this writ.

For the purpose of convenience, Dodd, the defendant in error, will be referred to here as plaintiff, and the Indemnity Company, plaintiff in error, will be referred to as the defendant, as they were in the court below.

It is admitted that, if the policy was valid, $15,000 was the amount of the indemnity to be paid for the loss of a foot. The defendant claimed, at the trial, that the amputation of the entire foot was unnecessary. Upon this point the evidence was conflicting, and the matter was properly submitted to the jury, which found for the plaintiff.

At the time of the issuance of this policy to the plaintiff, section 4220 of the Virginia Code of 1919 was in effect, and was as follows:

"All statements * * * in any application for a policy of insurance shall be deemed representations and not warranties, and no statement in such application * * * shall bar a recovery upon a policy of insurance, or be construed as a warranty, anything in the policy to the contrary notwithstanding, unless it be clearly proved that such answer or statement was material to the risk when assumed and was untrue."

There are many questions raised in this case that were doubtful and upon which the evidence was conflicting. The defense made, that the shooting was intentional, not accidental, was strongly contested pro and con, and was properly left to the jury under a charge of the court, manifestly correct on this point.

Again, with respect to the answer to question 14, concerning the plaintiff's weekly earnings, which in gross did exceed the weekly indemnity fixed in the policy, but which, after deducting office expenses, only amounted to little more than one-half of the weekly indemnity, we are of the opinion that there was such uncertainty as to what is meant by average weekly earnings that there was a serious doubt as to the truth or falsity of the answer. While it can readily be seen that a company would hesitate to issue a policy providing for a weekly indemnity in excess of the net earnings of the insured, thereby offering an inducement for malingering, yet the company itself formulated and propound-

ed this question, and it should be construed strictly against it. The rule is well settled, and needs no citation to support it, that in case of an ambiguity all questions of construction are decided strictly against the insurance company. There is, however, no necessity for any rule of construction, where there is no ambiguity or uncertainty.

Nor do we think that the learned trial judge was in error when he sustained the motion to set aside the verdict as to Mabel K. Dodd.

A point was presented as to the materiality of the answer to question 21, where the applicant stated that he had not, for seven years prior to the date of the application, received medical or surgical attention, except that in January, 1918, he was treated for dislocated shoulder, lasting for three weeks. It developed at the trial that he had received medical attention on March 9, 1919, for ruptured shoulder; in January, 1923, for the grippe; in April, 1923, for measles; in June, 1921, for boils; and in February, 1924, for injury to his back. In view of our holding in this opinion as to the materiality, as a matter of law, of the answer to question 15, we do not deem it necessary to decide the point raised as to the answer to this question 21.

This brings us to what we deem to be the vital point in the case, plaintiff's answer to question 15 above set out. This question must, of course, be considered in the light of the Virginia statute.

[1] Statutes of this character are mandatory, and control the nature and terms of the contract into which the parties have entered, and cannot be set aside by the company, even with the consent of the assured. Equitable Life Assurance Society v. Pettus, 140 U. S. 226, 11 S. Ct. 822, 35 L. Ed. 497; New York Life Insurance Co. v. Cravens, 178 U. S. 389, 20 S. Ct. 962, 44 L. Ed. 1116.

Subject to the limitation imposed by the Virginia statute, the application was made a part of the policy. "Where the entire application is made by express words a part of the policy, it is entitled to the same consideration as if it had been inserted at large in that instrument. The policy and application together, therefore, constitute the written agreement of insurance; and, in ascertaining the intention of the parties, full effect must be given to the conditions, clauses and stipulations contained in both instruments." 7 Encyc. of U. S. S. C. R. 96, and cases there cited.

[2] When statutes of this character have been construed by the state courts, such construction is followed by the federal courts. "The interpretation of a state statute by the state courts with respect to its application to policies issued by a foreign insurance company is binding on the Supreme Court of the United States." New York Life Ins. Co. v. Cravens, supra; See, also, Washburn & Manufacturing Co. v. Reliance M. Insurance Co., 179 U. S. 1, 21 S. Ct. 1, 45 L. Ed. 49; Iowa Life Insurance Co. v. Lewis, 187 U. S. 335, 23 S. Ct. 126, 47 L. Ed. 204.

[3] Upon the question of whether the materiality of a representation was a question for the court, or for the jury, the Virginia court has said: "Whether a representation is made and the terms in which it is made are questions of fact for the jury; but, when proved, we are of opinion that its materiality is a question for the court." Metropolitan Insurance Co. v. Hayslett, 111 Va. 107, 68 S. E. 256. This construction seems to have been consistently followed by the Virginia court. New York Life Insurance Co. v. Franklin, 118 Va. 418, 87 S. E. 584; North River Ins. Co. v. Atkinson, 137 Va. 313, 119 S. E. 46.

[4] What the company had a right to demand and did demand of the plaintiff in answering the questions in the application "as a condition precedent to any binding contract" was "that he would observe the utmost good faith towards it, and make full, direct, and honest answers to all questions, without evasion or fraud, and without suppression, misrepresentation, or concealment of facts, with which the company ought to be made acquainted, and that by so doing, and only by so doing, would he be deemed to have made 'fair and true answers.'" Moulor v. American Life Ins. Co., 111 U. S. 335, 4 S. Ct. 466, 28 L. Ed. 447.

In our search of the authorities on this question, one of the most illuminating cases we have found is that of the Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202. There admittedly false answers were made in an application for a life insurance policy and in the opinion Mr. Justice McReynolds said:

"Considered in most favorable light possible, the above-quoted incorrect statements in the application are material representations; and, nothing else appearing, if known to be untrue by assured when made, invalidate the policy without further proof of actual conscious design to defraud. Moulor v. American Life Ins. Co., 111 U. S. 335, 345, 4 S. Ct. 466, 28 L. Ed. 447, 450; Phœnix Mutual Life Ins. Co. v. Raddin, 120 U. S. 183, 189, 7 S. Ct. 500, 30 L. Ed. 644, 646; Ætna

Life Ins. Co. v. Moore, 231 U. S. 543, 556, 34 S. Ct. 186, 58 L. Ed. 356, 365."

This seems to us to be similar to the case here. What could be more material than the statement made in the application by the plaintiff, Dodd, admittedly false, that he had not received indemnity for any accident or sickness, except one claim in 1918, for a dislocated shoulder, when it is an admitted fact that he had received indemnity for accident and sickness on six other occasions in varying amounts, the last being the sum of $207 indemnity for a sprained back, the latter less than two years before the date of the making of the application.

Chronic claimants are naturally much to be avoided by accident insurance companies, and former claims made, based on injuries such as "sprained back," where medical science is helpless to prove or disprove the extent of the injury, and physicians must rely almost wholly on statements of the patient as to his condition, are especially calculated to cause insurance companies to refuse to assume the risk applied for. Six claims for indemnity made by the plaintiff, three of them within a period of 15 months, could not have been forgotten by him. The conclusion is inevitable that the answer to question 15 of the application, admittedly untrue, was material to the risk.

[5] Again in Mutual Life Ins. Co. v. Hilton-Green, supra, the court said:

"Beyond doubt an applicant for insurance should exercise toward the company the same good faith which may be rightly demanded of it. The relationship demands fair dealing by both parties. N. Y. Life Ins. Co. v. Fletcher, 117 U. S. 519, 6 S. Ct. 837, 29 L. Ed. 934; Northern Assur. Co. v. Bldg. Ass'n, 183 U. S. 308, 22 S. Ct. 133, 46 L. Ed. 213."

How much more are good faith and fair dealing demanded of an agent making application, as in this instance, to the company he represents, and towards which he stands in a confidential relation. This duty Dodd did not perform; his conduct was not consistent with good faith or fair dealing. "An agent may deal directly with his principal, when the facts are fully disclosed, and the agent acts in good faith, taking no advantage of his situation. But the strictest of faith is required." Fireman's Fund Ins. Co. v. McGreevy (C. C. A.) 118 F. 415.

A full discussion of the point involved as to whether the answer to question 15 was material to the risk is found in Penn. Mut. Life Ins. Co. v. Savings Bank, 72 F. 413. There Chief Justice Taft, then sitting as judge of the United States Circuit Court of Appeals for the Sixth Circuit said:

"And, on the other hand, it does not disprove that a fact may have been material to the risk because it had no actual subsequent relation to the manner in which the event insured against did occur. A fair test of the materiality of a fact is found, therefore, in the answer to the question whether reasonably careful and intelligent men would have regarded the fact, communicated at the time of effecting the insurance, as substantially increasing the chances of the loss insured against. The best evidence of this is to be found in the usage and practice of insurance companies in regard to raising the rates or in rejecting the risk on becoming aware of the fact."

One of the best definitions that we have been able to find as to what constitutes a material question is laid down in Jeffries v. Ins. Co., 22 Wall. 47, 22 L. Ed. 833, where the court said:

"But if, under any circumstances, it can produce a reply which will influence the action of the company, the question cannot be deemed immaterial."

Applying this rule to question 15 in the application here, it cannot be doubted that, if answered truly, the question and answer would have influenced the action of the company. "The usual rules as to the determination of questions of law and fact, or as to the province of the court and jury apply to insurance cases." 7 Encyc. U. S. S. C. R. 212.

This court in Keeton v. Jefferson Standard Life Ins. Co., 5 F.(2d) 183, has decided the point involved here as to the materiality of the questions and answers in an application for a life insurance policy. Judge Waddill says in the opinion:

"In this case, the answers to the questions were of a character that the applicant could not have been mistaken about. * * * All of which answers, being material and of vital importance to the transactions thus consummated, were entirely false, and deceived and misled the insurance companies into making the contracts of insurance. * * * Authorities to sustain these views might be cited almost without number." * * *

Again in Missouri State Life Ins. Co. v. Guess, 17 F.(2d) 450, this court, in an opinion by Judge Parker, said:

"There is no doubt, of course, that representations of the sort contained in the application for reinstatement are material to the risk, and that, if false to the knowledge of applicant, they avoid the policy and warrant its cancellation. Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202; Keeton v. Jefferson

Standard Life Ins. Co. (C. C. A. 4th) 5 F. (2d) 183. But, to warrant cancellation, the evidence as to fraud must be 'clear, unequivocal, and convincing.' 32 C. J. 1269; Maxwell Land-Grant Case, 121 U. S. 325, 381, 7 S. Ct. 1015, 30 L. Ed. 949; U. S. v. San Jacinto Tin Co., 125 U. S. 273, 300, 8 S. Ct. 850, 31 L. Ed. 747; U. S. v. Budd, 144 U. S. 154, 161, 12 S. Ct. 575, 36 L. Ed. 384; Lalone v. U. S., 164 U. S. 255, 257, 17 S. Ct. 74, 41 L. Ed. 425; U. S. v. Bell Telephone Co., 167 U. S. 224, 241, 17 S. Ct. 809, 42 L. Ed. 144."

[6] It is true that in the last case it was held that the policy was not invalidated by the falsity of the answers but that was because of uncertainty as to which policy the answers referred. No such uncertainty exists in this case, and the evidence is "clear, unequivocal, and convincing."

"A positive statement of fact, falsely made, with respect to a material matter, will, nothing else appearing, be deemed to have been made willfully and with intent to deceive." New York Life Ins. Co. v. Wertheimer (D. C.) 272 F. 730; Maryland Casualty Co. v. Eddy (C. C. A.) 239 F. 477.

"Where the evidence leaves any doubt as to the existence of a fact, the matter should be left to the jury; but, where it is established by all the evidence on both sides, the jury cannot be permitted to find to the contrary. And, in respect to concealments, the materiality of matter concealed may, as in this case, be so apparent that it should not be left open to a jury to find it not material." Fireman's Fund Ins. Co. v. McGreevy, supra.

The statement made in answer to question 15 was admittedly false, and the plaintiff knew of its falsity. That it was material to the risk cannot be doubted, considering the question in the light most favorable to the plaintiff, and the jury should have been so instructed. The charge of the trial judge on this point was erroneous, and the judgment below is reversed, and the case remanded to the District Court, to be further proceeded with in accordance with this opinion.

Reversed.